UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JUAN C. MONTALBA                                                                              PLAINTIFF

VS.                                   4:17-CV-00301-JM-JTR

VIVALON NELSON, Lieutenant,
Pulaski County Regional Detention Facility, *et al*.                      DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James Moody, Jr. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

1

## I. Introduction

Plaintiff Juan C. Montalba ("Montalba"), proceeding *pro se*, contends that, while incarcerated at the Pulaski County Regional Detention Facility ("PCRDF"), his constitutional rights were violated when Defendants Officer Robert Andexler ("Andexler"), Lieutenant Vivalon Nelson ("Nelson"), and Officer Curtis Williams ("Officer Williams") failed to protect him from an attack by a fellow prisoner, Jessie Williams ("Inmate Williams").[1]  *Docs. 2 & 6*.  Defendants are sued in their individual capacities only for the injuries Montalba received during the attack by Inmate Williams.  *Doc. 9 & 13*.

Defendants Andexler, Nelson and Williams have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[2]  *Docs. 47-49*.

---

[1]  After being attacked Montalba was transferred to the Hawkins Unit of the Arkansas Department of Correction ("ADC") to begin serving the sentence he received following his conviction in Pulaski County Circuit Court.  In his Complaint, he also asserted a claim against medical personnel at the Hawkins Unit who allegedly provided him with inadequate medical care for his injuries related to the attack by Inmate Williams.  *Doc. 2 at p. 4*.

On August 31, 2017, the Court entered an Order dismissing this inadequate medical care claim, without prejudice, because it was unrelated and legally distinct from Montalba's failure to protect claim.  *Doc. 9 & 13*.

[2]  Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

Montalba has filed a Response, *Doc. 53*, to which Defendants have filed a Reply, *Doc. 54*.

Before reaching the merits of Defendants' Motion for Summary Judgment, the Court will review the relevant undisputed facts giving rise to Montalba's failure to protect claims.

1.  On December 2, 2015, Montalba was a convicted prisoner awaiting transfer to the ADC to being serving his sentence. He was housed in the PCRDC's P-Unit. *Doc. 48 at pp. 1-2*.

2.  Andexler was on duty at the deputy station in the PCRDC's P-Unit at the time Montalba was attacked. Another inmate told Andexler: "They are fighting outside, it's pretty bad." Andexler immediately went outside and found Montalba sitting against a wall, bleeding from a wound over his left eye. *Doc. 48 at p. 2; Incident Report, Doc. 48-1, p. 11*.

3.  Andexler called a Code Red (Medical Infirmary), placed the unit on lock down, and waited with Montalba until other officers, nurses and an EMT arrived.[3] *Id*.

4.  After securing medical attention for Montalba, Andexler investigated and learned that Inmate Williams was the prisoner who attacked Montalba. After

---

[3] Montalba was treated for a laceration above and below his left eye and swelling in his nose and eye. He also was referred to UAMS for further evaluation. *Doc. 48, p. 2*.

examining Inmate Williams' face and knuckles, both of which were swollen, Andexler charged Inmate Williams with battery. *Id*.

5. Before the December 2, 2015 fight, Montalba had a "keep separate" list that identified inmates who were to be housed separately from him. Inmate Williams was *not* on that list. If Inmate Williams had been on Montalba's "keep separate" list, the two inmates would have been housed separately, in accordance with PCRDF policy and practice. *Doc. 48, p. 3, ¶¶ 18-20*; Affidavit of Lt. Nelson, *Doc. 48-2, p. 1, ¶ 5*.

6. Before the December 2, 2015 fight, Montalba alleges that he repeatedly asked Officer Williams to "please [do] not put him [Montalba] in P-Unit" because "he had an enemy in that unit." He also alleges he told the Defendants that he "was scared to go in P-Unit."[4] *Doc. 53 at pp. 2-3*.

7. On December 4, 2015, Inmate Williams and Montalba were each placed on the other's "keep separate" list. *Doc. 48-1, pp. 3, 24, 27*.

## II. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee" inmate safety by

---

[4] While Defendants deny these allegations, these "disputed facts" are *not* material or outcome determinative for purposes of Defendants' Motion for Summary Judgment. *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) ("[T]he mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law.").

protecting them from attacks by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002). Instead, to prevail on his failure to protect claim, Montalba must prove that: (1) objectively, he faced a substantial risk of serious harm from an attack by Inmate Williams;[5] and (2) subjectively, each Defendant was deliberately indifferent to that substantial risk of serious harm. *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011); *Young*, 508 F.3d at 872. An official is deliberately indifferent only if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

To satisfy the first objective element, an inmate must show that a prison official's acts or omissions resulted in the inmate being "incarcerated under conditions posing a substantial risk of serious harm." *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007). In support his claim that he was incarcerated under a "substantial

---

[5] Montalba's failure to protect claim must be analyzed based on the specific threat posed by Inmate Williams, who was not on Montalba's "keep separate" list and who was never identified by Montalba as someone who might want to harm him. Rather, Montalba argues his placement in P-Unit *alone* exposed him to a substantial risk of serious harm. However, he provides *no facts* to support that argument. *See, e.g., Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018) (analyzing both prisoner's claim that defendants failed to protect him from: (a) a specific inmate attack; and (b) a general risk of harm based on understaffing and routine failure to conduct security checks).

risk of serious harm," Montalba relies entirely on his *generalized fear* that he had "an enemy" in P-Unit who he never named or otherwise attempted to describe to any of the Defendants before Inmate Williams surprise attack.[6] Specifically, Montalba did *not* tell any Defendant that: (1) he was having a problem with any particular inmate in P-Unit; (2) Inmate Williams should be placed on his "keep separate" list; or (3) any facts which, viewed objectively, might suggest he faced any threat from Inmate Williams. Viewing the facts surrounding the attack in a light most favorable to Montalba, no reasonable jury could find that his assignment to P-Unit placed him at "substantial risk of harm" from an attack by Inmate Williams. *Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016) ("An inmate's complaints of 'general fear for his safety' do not establish that a defendant 'acted with deliberate indifference by not placing him in protective custody.'") (quoting *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994)).

---

[6] Montalba also contends the P-Unit was for federal prisoners, and it was unlawful to place state and federal prisoners together in the same pod. He cites no legal authority for this contention, and he presents no evidence to support his subjective belief that he was at a greater risk of harm because he was housed in a unit that also contained "federal" inmates.

Inmates at the PCRDF are *not* separated based on whether they are charged with or have been convicted of state or federal crimes. Instead, the PCRDF uses a behavioral classification system to make inmate housing assignments. *Doc. 48-2, p. 1-2*. It is well settled that prisoners do not have a liberty interest in being housed in or transferred to a particular prison unit. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Pereshini v. Callaway*, 651 F.3d 802, 807 n. 4. (8th Cir. 2011); *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999). Accordingly, Montalba's constitutional rights were *not* violated because he was held in a pod that contained prisoners being held on federal, as well as state, criminal charges.

Additionally, there is nothing about the circumstances of the December 2nd attack which suggests that, subjectively, any Defendant acted with deliberate indifference. There is no evidence that any Defendant knew, based on the generalized safety concern Montalba voiced about his placement in P-Unit, that he was in any danger – imminent or otherwise – of being attacked. There simply are no facts suggesting that any Defendant acted with deliberate indifference to a known risk to Montalba.

Montalba argues the Defendants "did not do their jobs correctly," which resulted in his injuries. His apparent theory is that, having expressed a generalized fear for his safety, Defendants became strictly liable for any subsequent injuries he might suffer from an attack by anyone in the unit. At most, this conclusory argument might support a claim against Defendants for negligence, but not the far higher deliberate indifference standard that governs Montalba's failure to protect claims. A prison guard's negligence, or even gross negligence, is not actionable under § 1983. *See Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002).

Accordingly, Defendants Andexler, Nelson, and Williams are entitled to summary judgment on the failure to protect claims Montalba has asserted against

7

them, in their individual capacities, and those claims should be dismissed, with prejudice.[7]

### III. Conclusion

Montalba's only remaining claims are the ones he has asserted against Defendants Andexler, Nelson and Williams for failing to protect him from the injuries he suffered in the attack on December 2, 2015. For the previously explained reasons, those claims fail as a matter of law.

IT IS THEREFORE RECOMMENDED THAT Defendants Andexler, Nelson and Williams' Motion for Summary Judgment *(Doc. 47)* be GRANTED, and all of Montalba's remaining claims against them be DISMISSED, WITH PREJUDICE.

Dated this 4th day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] Defendants have also raised the defense of qualified immunity. Because there is no evidence of a constitutional violation, there is no need for the Court to address qualified immunity as an alternative reason for dismissal. *See Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009) ("Since we find no constitutional violation, we need not address the issues of qualified immunity and municipal liability"); *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) ("[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed").